# CHARLESTON.

BOYLAND v. CITY OF PARKERSBURG.

Submitted September 26, 1916.    Decided October 10, 1916.

1.  MUNICIPAL CORPORATIONS—*Torts—Defects in Streets.*

Section 56a XLIX, chapter 43, Code 1913, imposes an absolute liability on incorporated cities and towns for injuries sustained on account of their public streets and sidewalks being out of repair, or obstructed in such manner as to make it dangerous to travel thereon in the ordinary modes.    (p. 753).

2.  SAME—*Defects in Streets—"Repair."*

The word "repair" as used in the foregoing statute includes obstructions to the highway as well as defects therein, without regard to the manner in which or the person by whom such obstructions were placed there.    (p. 753).

3.  EVIDENCE—*Municipal Corporations—Judicial Notice—Objections to Evidence—Waiver.*

Courts do not judicially take notice of the ordinances of municipal corporations unless directed by statute to do so, except that the courts of a municipal corporation of a city will take judicial notice of the ordinances of such city, but where an ordinance of a city is put in evidence without proof of the existence of such ordinance, or that it is an ordinance of the city, and no objections are made to its introduction at the time, proof of its existence and authenticity will be waived.    (p. 756).

4.  MUNICIPAL CORPORATIONS—*Streets—Defects in Streets—Contributory Negligence.*

A traveler along a public sidewalk having two reasonably convenient ways for his journey, one by continuing on the sidewalk which is known to him to be dangerous, and the other by leaving the sidewalk and traveling along the street known to him to be safe, assumes the risk if he takes the dangerous way, and he can not recover for an injury he may thereby sustain; but in the absence of knowledge as to the condition of the sidewalk along which he was traveling, he will not be denied compensation for this reason alone, when he pursues his way along the sidewalk, although it may be dangerous.    The question of whether or not he knew it was dangerous, or by the use of proper care could have known it, is for the jury.    (p. 757).

5.  SAME—*Streets—Actions for Injuries—Instruction.*

An instruction which tells the jury that if they believe from the evidence "that the plaintiff was injured by a fall caused by the

ice accumulated upon the sidewalk by the freezing water discharged from the down spout upon, the Arendt building'' (a building abutting on the sidewalk) ''so as to flow upon and along the sidewalk making said sidewalk dangerous to walk upon, and the plaintiff at the time used common and ordinary care in passing over and walking on the said sidewalk at that point'', the defendant ''is liable for the damages resulting to the plaintiff from said injury'', when read in connection with another instruction which tells the jury that ''before they can render a verdict for the plaintiff, the plaintiff must prove her case, as alleged in the declaration, by a preponderance of the evidence, and that should they find the evidence evenly balanced, the verdict must be for the defendant,'' is not erroneous. (p. 758).

6. SAME.

An instruction properly defining the duties of the defendant in constructing and keeping in repair its sidewalks, and the circumstances to be considered in determining whether the sidewalk was in repair and what constituted repair, was proper in the case at bar. (p. 758).

7. SAME—*Streets—Actions for Injuries—Snow and Ice.*

Instructions in the case at bar which tell the jury that if they believe from the evidence that the snow and ice upon which plaintiff fell ''was not formed in humps, ridges or hills'', ''but was only dangerous because of the slipperiness of the ice and the covering of the snow,'' such condition although dangerous was not such a defect as will render the city liable for damages, and that it sufficiently exempts the city from liability that such ice was comparatively smooth and practically uniform in thickness upon the sidewalk, are erroneous and properly refused. (p. 759).

8. SAME—*Streets—Actions for Injuries—Instructions—''Ordinary Care.''*

An instruction in the case at bar which properly defines what is meant by ''ordinary care'', is proper and should be given when asked for. (p. 760).

9. SAME—*Streets—Actions for Injuries—Snow and Ice.*

The following instruction asked for by defendant was properly refused: ''The jury is instructed that if they believe from the evidence that the plaintiff was injured as alleged in the declaration, by an obstruction of snow and ice on the sidewalk, the question whether the defendant was negligent in allowing such obstruction to be and remain depends upon all the circumstances, and that if the jury believe from all the evidence that owing to the condition of the weather, repeated thawing, and freezing, said ice was frozen tight to the pavement, and that a like condition ex-

isted all over the sidewalks of the city, and that by reason thereof it was impracticable for the city to have removed such ice, then the jury must find that the city was not negligent in failing to remove said ice, but had the right to await a general thaw before removing the same, and if the jury find from the evidence that no such thaw had occurred after forming of the ice and before the accident, they shall find for the defendant.'' (p. 760).

Error to Circuit Court, Wood County.

Action by Lottie Boyland against the City of Parkersburg. From a judgment for plaintiff, defendant brings error.

> Reversed, and new trial awarded:

*Smith D. Turner* and *William J. Brannon,* for plaintiff in error.

*Merrick & Smith,* for defendant in error.

MASON, JUDGE:

This is an action of trespass on the case, brought by Lottie Boyland against the City of Parkersburg. The case was tried before a jury; judgment for $1,000.00; and brought to this court by the defendant on writ of error.

The declaration alleges that the defendant city had permitted two property owners, Christian Arendt and Birdie K. McCosh, to collect water falling on their respective houses into down spouts and discharge the same upon the public sidewalk of the city in front of the vacant lot between the said two houses, and that said water had, on December 18, 1914, frozen and accumulated into ice in considerable quantities on the sidewalk, in irregular and dangerous form, and that by reason thereof said sidewalk was in an unsafe and dangerous condition, and that the plaintiff, while necessarily passing over said sidewalk, after dark, on December 18, 1914, after a light coating of snow had fallen on said sidewalk, slipped on the ice, and fell and broke her leg. It is further alleged that the ice was a dangerous obstruction and rendered the sidewalk out of repair; that it was the duty of the city to keep the sidewalk in repair; that it was a breach of that duty to permit the accumulation of ice; and that the alleged injury resulted therefrom, etc. The declaration also alleges that ice upon the

sidewalk was formed from water from the McCosh building, coming from a drain under the sidewalk up through a broken place therein, and from water discharged from the down spout on the Arendt building upon the sidewalk.

On the trial before the jury, it appeared that the accident occurred on the sidewalk in front of a vacant lot between the McCosh and the Arendt buildings; that the sidewalk sloped from the property line to the curb only enough to drain well, and lengthwise with the natural grade of the street, which sloped toward the McCosh building; that prior to December 13th, the street and sidewalk were clear of snow and ice, no rain or snow having fallen since the first of the month sufficient to form ice; that on December 13th three and six-tenth inches of snow fell, and from then until the 18th of December, the highest temperature was 33 degrees Fahrenheit, and the lowest was five degrees below zero; that the depth of the snow generally had decreased from three and six-tenth inches on the 13th to one and four-tenth inches on the 18th, by the slight thawing permitted by the state of the weather; that the owner of the lot between the Arendt and McCosh buildings was a non-resident of the City of Parkersburg, and that the sidewalk in front of the vacant lot had not been cleaned of this snow; that the sidewalk in front of the McCosh building and the Arendt building had been cleaned of the snow; that the sidewalks of the city generally, where the snow had not been cleaned off, were slippery; that the ice covered the whole or about all of the sidewalk from the Arendt building to the McCosh building, but as to the quantity of ice there is some conflict in the testimony; and that it was smooth and slippery.

It further appears from the evidence that the plaintiff had lived about four years about three squares from the place of the accident; that she knew the sidewalk in question; knew that the sidewalks of the city at the time were slippery where the snow had not been cleaned off; that she was coming west along Seventh Street, and passed under the awning in front of the McCosh building, and took two or three steps upon the ice in front of the vacant lot, when she fell.

There were water spouts leading from the roofs of the McCosh and Arendt buildings to the sidewalk. The spouts ran to

within a few inches of the sidewalk, and the water was dispersed over the sidewalk. The down spout on the McCosh building had rotted off several feet above the sidewalk, and the water emptied on and spread over the sidewalk. The water from the Arendt building flowed toward the McCosh building along the sidewalk, and toward the street. There is some evidence tending to show that this ice was formed from water which came from the down spout of the Arendt building, spreading over the sidewalk along the vacant lot, mingling with the water from the melting snow. The distance between the two buildings is about twenty-five feet. The accident occurred about six or seven o'clock in the evening. The street was lighted to some extent.

Counsel for the defendant insists that under these facts the city is not liable in damages.

The theory upon which the plaintiff bases her right to recover is that it was the duty of the defendant under the laws of this state to keep its streets and sidewalks in repair and free from obstructions, and that the defendant wholly failed to perform its duty, and permitted the place where the accident occurred to become out of repair and in an unsafe and dangerous condition.

Under the Code of West Virginia, chapter 43, section 56a XLIX, "any person who sustains an injury to his person or property by reason of a public * * * sidewalk in any incorporated city, town or village being out of repair, may recover all damages sustained by him by reason of such injury," etc. This court has frequently held that this statute "imposes an absolute liability on incorporated cities and towns for injuries sustained on account of its public streets and sidewalks being out of repair, or obstructed in such a manner as to make it dangerous to travel thereon in the ordinary modes." *Stanton* v. *City of Parkersburg*, 66 W. Va. 393. This court in construing this statute has held that the word "repair" as used therein includes obstructions on the highway as well as defects in it, without regard to the manner in which or by whom such obstructions were placed there; in short, that it is the positive duty of the municipal authorities to keep such vigilant watch by day and by night over the

highways under their charge that they would be free from both obstructions and defects and in a reasonably safe condition for travel in ordinary modes with ordinary care at all times. See opinion of the court in *Arthur* v. *City of Charleston,* 51 W. Va. at page 134. The language of the statute is plain and unqualified, without exceptions or limitations. The rule as above stated which makes a municipal corporation liable for injuries sustained by a person by reason of a public sidewalk being out of repair or obstructed, applies to obstructions caused by the accumulation of ice and snow. It makes no difference in what manner or by whom the obstructions were placed on the sidewalk. It is the fact of obstruction and not the means by which it is accomplished that the law makes actionable.

"The rule is otherwise in the cases of towns or other municipal bodies upon which no such absolute liability is imposed. They are only bound to exercise ordinary care and vigilance in keeping their streets in repair." *Chapman* v. *Milton,* 31 W. Va. opinion of the court, page 386. In such cases, before the municipality can be held liable for an injury due to an accumulation of snow and ice upon its sidewalk, it must be shown that its own negligence caused or contributed to the snow and ice being there. 28 Cyc. 1373; McQuillin on Municipal Corporations, section 2789. But under our statute the liability is absolute where the injury is sustained by reason of the sidewalk being out of repair. The question as to whether or not the sidewalk was out of repair or obstructed was for the jury.

This would seem to be a somewhat drastic measure. We need only say that this statute is a very old one, at first applied to public roads and bridges, and afterwards to streets, alleys and sidewalks. We are not aware that it has ever exposed municipal authorities to any unjust burdens. If the defect or obstruction on the sidewalk or street were open and visible so that the traveler could see by the use of ordinary care and diligence that it would be dangerous to attempt to pass it, and through his own rashness and negligence be injured, he could not recover damages. In *Phillips* v. *County Court,* 31 W. Va. 478, it is said: "A traveler on a public

road must exercise at least ordinary care and caution.  No recovery can be had by the plaintiff in an action against a county where his negligence in any degree contributed to the injury, unless the defendant being aware of the plaintiff's danger and having the opportunity to avert it fails to use ordinary caution to do so.  If the plaintiff voluntarily incurs danger so great that no sensible or reasonable person would have incurred it, in the absence of negligence on the part of the defendant that exhibits a design or intention to wantonly injure him, he will be precluded from a recovery.''

''In an action against a town or county for injury received from a defect in a highway, it is generally a good defense to show that the plaintiff himself is guilty of contributory negligence.'' *Phillips* v. *County Court, supra.*  In *Moore* v. *Huntington*, 31 W. Va. 849, it is held: ''It is evident from the authorities that a person who uses the streets or sidewalks which his observation prudently exercised would inform him was dangerous takes the risk of such injury as may result to him from open and apparent defects such as his observation ought to have detected and avoided.''  Abbott on Municipal Corporations, section 1048, says: ''As already suggested, defects may be either patent or latent.  Where the defect is open and easily discovered the traveler cannot, acting upon the presumption which exists in his favor, run blindly into it.  In so doing the courts hold that he will not be exercising ordinary care.''  In section 1051 it is said that when the defect is open, a traveler must take into consideration this fact, and if he is injured ''through an attempted use of a highway in a notoriously defective and dangerous condition he is chargeable with contributory negligence.''  Many of our cases assert this doctrine; among them, *Hesser* v. *Grafton*, 33 W. Va. 348; *Van Pelt* v. *Town of Clarksburg*, 42 W. Va. 218; *Slaughter* v. *City of Huntington*, 64 W. Va. 237; *Shriver* v. *County Court*, 66 W. Va. 685.  Nor is every defect in a public highway actionable, though it may cause the injury.  In *Yeager* v. *City of Bluefield*, 40 W. Va., at pages 487-8, Judge BRANNON, in delivering the opinion of the court, says: ''When we are told, as in *Chapman* v. *Milton*, 31 W. Va. 384 (7 S. E. Rep. 22) and *Gibson* v. *City of Huntington*, 38 W. Va. 177

(18 S. E. Rep. 447) that the liability of cities and towns for injuries by reason of streets being out of repair is absolute, we must not be misled. It is meant that, when the basis or cause of the liability exists, that liability is absolute in the sense that no want of notice or other excuse for the defect in the street will exonerate the town. But this idea of absoluteness does not refer at all to the cause of liability, but only to the liability when it exists. It does not mean that the state of the street must be perfect. Before imposing this absolute liability, we must first determine whether the street is out of repair in the sense of the statute. When is it so out of repair? Is it to be absolutely free from stones, mud, or inequalities, like the floor of your own home, or like the paths, walks and drives in the grounds of a royal palace or beautiful park? Where shall we find this perfection? Is it to furnish absolute immunity from accident and injury? What city or town in the country might not be bankrupted if this is to be the construction of the statute? There is no city, however well ordered, complying with this standard. None could do so with the means at its command, short of confiscatory taxation. It is hard, indeed impracticable, to define in advance, suitable for every case, just what the words "out of repair" here used do mean. About all that can be said by way of general rule is that cities, towns and villages are simply required to keep streets and sidewalks in a reasonably safe condition for persons traveling in the usual modes by day and night, and exercising ordinary care. Elliott, Roads & S. 448." Guided by these rules it is not possible that this statute will impose any hardship on municipal authorities; and then, we must not forget that it is a statute which the Legislature had the right to adopt, and did adopt, and it is simply the duty of the courts to enforce it.

The appellant complains of certain rulings of the court during the trial:

1. Plaintiff was permitted on the trial over the objection of the defendant to read a part of an ordinance of the city which made it unlawful for a property owner to permit any ice or snow to remain upon the sidewalk in front of his lot longer than two hours, or after ten o'clock A. M. of any day, if the

snow fell or was cast upon the sidewalk during the night;
also making it unlawful for any property owner to construct
or maintain any down spout so as to discharge water over or
upon any sidewalk of the city, and providing a fine for the
violation thereof.    The record does not show that any ob-
jection was made to the introduction of the ordinance for
want of proof of its genuineness.    The ordinance was intro-
duced, so far as the record shows as to that, without objec-
tion; hence whatever objection might have been urged against
it on that account was waived.    We think, however, that the
ordinance was not relevant and should not have been read to
the jury.

2. Appellant's counsel insists that the court erred in re-
fusing to permit the defendant to show the condition of the
street at the point where the accident occurred; and if per-
mitted to do so, the defendant would have shown that the
street along the side of the sidewalk at that point would have
afforded plaintiff a safe and convenient way to have proceed-
ed.    There is no proof that plaintiff knew the sidewalk was
dangerous until too late to retrace her steps, or that she knew
the condition of the street.    She was not required to forego
the sidewalk and seek a different route under the circum-
stances.    *City of Muncie* v. *Hey*, 164 Ind. 570; *Shriver* v.
*County Court, supra*.

3. Defendant objected to the following instruction given at
the instance of the plaintiff: "If the jury find from the evi-
dence that the plaintiff was injured by a fall caused by the
ice accumulated upon the sidewalk by the freezing water
discharged from the down spout upon the Arendt building
so termed in the evidence so as to flow upon and along the
sidewalk, making said sidewalk dangerous to walk upon, and
the plaintiff at the time used common and ordinary care in
passing over and walking upon the said sidewalk at that
point, then the defendant, the City of Parkersburg, is liable
for the damages resulting to the plaintiff from said injury,
and the jury shall find for the plaintiff."    It is urged in crit-
icism of this instruction that it was not applicable.    This ex-
ception is not well taken.    This instruction is based on the
plaintiff's theory of the case.    It says that if the jury shall

find from the evidence that the plaintiff was injured by a fall caused by the accumulation of ice upon the sidewalk, making the sidewalk dangerous to walk upon, and that she was using common and ordinary care in passing over the sidewalk, then the city is liable. As there is some evidence tending to support this theory, the plaintiff had the right to have it presented to the jury for consideration. Doubtless a sidewalk made dangerous to walk upon by the accumulation of ice thereon would be out of repair within the meaning of the statute hereinbefore referred to. This instruction read in connection with instruction No. 1 given at the instance of the defendant, is not objectionable.

4. The defendant asked for six instructions; one was given and the others refused, and defendant excepted. The defendant's first instruction was given. It reads: "The court instructs the jury that before they can render a verdict for the plaintiff, the plaintiff must prove her case, as alleged in the declaration, by a preponderance of the evidence, and that, should they find the evidence evenly balanced, the verdict must be for the defendant." This instruction was proper and was given without objection.

5. Defendant's instruction No. 2 is as follows: "The court instructs the jury that the City of Parkersburg is not an insurer against accidents upon the streets and sidewalks; nor is every defect or inequality therein, even though it may cause the injury sued for, actionable; nor is the city required to construct and maintain its streets and sidewalks in such a perfect manner and condition as to secure pedestrians absolute immunity from danger while passing there over; it is sufficient if the streets and sidewalks are in a reasonably safe condition for ordinary travel, by day and by night, by persons exercising ordinary care; and in determining in a given case whether or not a street or sidewalk is in reasonable repair, reference must be had to physical structure of the country, its climate, the condition of the weather, the time of the year when the accident complained of occurred, and other things naturally pertinent, and in considering the defect alleged in the declaration, the jury shall take into consideration what might reasonably be expected of the city un-

der all the facts and circumstances of the case, and whether or not it would have been reasonably practical for the city to keep its streets free from all such defects as that alleged in the declaration, and if the jury find from the evidence that the sidewalk, at the time and place of the injury sued for in this case, was, under all circumstances, in a reasonably safe condition for travel in the ordinary modes, with ordi-nary care, by day and by night, then they shall find for the defendant.'' This instruction substantially states the law and should have been given.

6. The following is defendant's third instruction. ''The court instructs the jury that the City of Parkersburg is not liable for *not* merely having allowed an accumulation of snow and smooth ice to form upon the sidewalk at the place of the alleged accident, nor is the city liable for the mere slipperiness of said sidewalk at said place occasioned by the presence of ice and snow thereon, even though water artifi-cially thrown upon said sidewalk at said point, by down spouts from the Arendt and McCosh buildings may have contributed to such ice, but the jury are further instructed that in order to hold the city liable, it is necessary for the plaintiff to prove that the ice and snow, upon which it is al-leged that the plaintiff fell, was formed into humps, ridges or hills so that it constituted a dangerous obstruction to travel upon said sidewalk. Therefore, the jury are further instruct-ed that if they believe from the evidence that the ice and snow upon which the plaintiff fell was not formed into humps, ridges, or hills, but was only dangerous because of the slip-periness of the ice and the covering of snow, then such a con-dition of said sidewalk, although dangerous, was not such a defect as renders the city liable for damages for the injury complained of, and if the jury believe from the evidence that the sidewalk, at the time and place of the alleged injury, had ice thereon which was not formed into humps, ridges or hills, so as to constitute a dangerous obstruction to travel, they must find for the defendant.'' This instruction was properly refused. Defendant may be liable for the injuries alleged, although the ice was not formed into ''humps, ridges or hills.''

7. Defendant's instruction No. 4 reads as follows: "The court instructs the jury that by "smooth ice", as used in the foregoing instruction, is not meant that such ice should be absolutely smooth as the surface of a floor; nor that it should be free from footprints, slight ruts and abrasions necessarily caused by constant travel there over; it is sufficient to exempt the city from liability that such ice was comparatively smooth and of practically uniform thickness upon the sidewalk, even though perilous because of its slipperiness, and not formed into humps, ridges and hills so as to constitute a dangerous obstruction upon the sidewalk." For the same reason assigned as to instruction No. 3, this instruction is not good, and was properly refused.

8. Defendant's instruction No. 5 is: "The jury is further instructed that by "ordinary care", as used in the foregoing instructions, is meant such care as a prudent person would take for his safety under all the circumstances of the case, taking into consideration her age, physical condition, the streets and sidewalks generally, the condition of the weather, the time of day or night, and other things naturally pertinent, and if the jury find from the evidence that the accident occurred at night, and that the streets and sidewalks of the said city at and near the point of the alleged accident, were generally covered with ice and snow, and dangerous because of their slipperiness, then "ordinary care" on the part of the plaintiff, means a greater degree of care and caution would be required of her than is ordinarily required of a pedestrian traveling over a sidewalk. And if the jury further find from the evidence, that in passing over the slippery sidewalk at the place of the accident, the plaintiff did not use such greater care and caution, and such care and caution as a prudent person would use under the circumstances, they must find for the defendant." This is a good instruction. It properly states the law as to what constitutes "ordinary care" and should have been given, and it was reversible error to refuse it.

9. The defendant's instruction No. 5(a) is: "The jury is instructed that if they believe from the evidence that the plaintiff was injured as alleged in the declaration, by an ob-

struction of snow and ice on the sidewalk, the question whether the defendant was negligent in allowing such obstruction to be and remain depends upon all the circumstances, and that if the jury believe from all the evidence that owing to the condition of the weather, repeated thawing, and freezing, said ice was frozen tight to the pavement, and that a like condition existed all over the sidewalks of the city, and that by reason thereof it was impracticable for the city to have removed such ice, then the jury must find that the city was not negligent in failing to remove said ice, but had the right to await a general thaw before removing the same, and if the jury find from the evidence that no such thaw had occurred after forming of the ice and before the accident, they shall find for the defendant.'' Under this instruction, the defendant need not have removed the snow or ice until there was a general thaw, but the law only gives the defendant a reasonable time, even in the absence of the statute. It was properly refused.

10. Defendant's instruction No. 6 is: ''The jury are instructed that if they find from the evidence that at the place of the alleged accident, ice and snow had formed on the sidewalk in humps, ridges and hills, so as to form a dangerous obstruction and render the sidewalk dangerous for pedestrians, and that the plaintiff knew, or by the use of ordinary care and caution could have known, of such condition of the sidewalk, and that by going into the street and exercising reasonable diligence she could have passed in safety around or by said obstruction, and without great inconvenience avoided said accident, then the jury are further instructed that the plaintiff assumed the risk of passing over said obstruction, and did not use care and caution, and that they must find for the defendant.'' This instruction, for reasons hereinbefore stated, would be bad. It was properly refused as not justified under the evidence.

Because of errors committed by the refusal of the court to give defendant's instructions Nos. 2 and 5, the judgment of the circuit court will have to be reversed, the verdict of the jury set aside, and a new trial awarded.

*Reversed, and new trial awarded.*